IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUXOTTICA GROUP S.p.A. and OAKLEY, INC., <br><br>        Plaintiffs, <br><br>    v. <br><br>HAO LI, et al., <br><br>        Defendants. | Case No. 16-cv-00487 <br><br>**Judge Manish S. Shah** <br><br>**Magistrate Judge Sheila Finnegan** |

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST
THE DEFENDANTS IDENTIFIED IN SECOND AMENDED SCHEDULE A,
WITH THE EXCEPTION OF CERTAIN DEFENDANTS

    Plaintiffs Luxottica Group S.p.A. ("Luxottica") and Oakley, Inc. ("Oakley") (collectively, "Plaintiffs") submit the following memorandum in support of their Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against the defendants identified on Second Amended Schedule A[1], with the exception of certain defendants[2], (collectively, the

---

[1] Second Amended Schedule A reflects the voluntary dismissal of the Defendants inconosites.com [41], Frank Julian [42], Hangzhou Jiefa Materials Co., Ltd. [45], westboroughpolice.com [46], dealatpop1bay [47], fashionthings2011 [47], grapebaiwan-us [47], hugebosser [47], light_tan [47], lovisasis [47], ollio2015 [47], pendoshop [47], qqlove2001 [47], ruigai [47], Shangai Banner Imp Exp Corp. [47], vijimall [47], oakleyzonnebrilholbrook.nl [48], ec-runandsupport.nl [48], ar-dam.nl [48], sebastian nagel [48], Chen Zhen [48], karolin meyer [48], Korogu Suna [48], MOINE Kyriam [48], rb-sito.it [48], graffitibeelden.nl [48], letmehelp.nl [48], broederschapshuizen.nl [48], airventure.be [48], Alicia Lefebvre [48], rmaalman.nl [48], deeplove.be [48], AUSTRALIAN DAY HOSPITAL ASSOCIATION LIMITED [48], Mills Steve [48], ChenJian Guo [48], nlraybanzonnebril.nl [48], wrfestival.nl [48], karintenkate.nl [48], Pribaltika.eu [48], Euro-fewo.eu [48], donnynjoo.nl [48], Barbara Muench [48], maximilian nacht [48], awwd [48], ml [48], Stefan fenstermacher [48], neshro.be [48], benvandijkkapper.nl [48], oab-dekoepel.nl [48], xandrine.nl [48], mareikenaumann.nl [48], DYWIDAG-SYSTEMS INTERNATIONAL PTY LIMITED [48], HILLS LIMITED [48], 2012sunnybaby [49], 2014_bigbang [49], 2014tobebetter2014 [49], allbest007 [49], autosport-cross2013 [49], cutebeads88 [49], crazygirls_88 [49], beautiful_charms88 [49], goodshare [49], ledlighthua2013 [49], small-dotdog [49], starsstyle [49], sweethomeandshine1 [49], and xiameiquin2011 [49].

1

"Defaulting Defendants") based on Plaintiffs' action for trademark infringement, counterfeiting, false designation of origin, cybersquatting and violation of the Illinois Uniform Deceptive Trade Practices Act.

## STATEMENT OF FACTS

Plaintiff Luxottica Group S.p.A. ("Luxottica") is a corporation duly organized under the laws of Italy with its principal place of business in Milan, Italy and an office located at 4000 Luxottica Place, Mason, Ohio 45040-8114. Amended Complaint [9] at ¶ 3. Plaintiff Oakley, Inc. ("Oakley") is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at One Icon, Foothill Ranch, California 92610. *Id.* at ¶ 15. Plaintiff Oakley is an indirect, wholly-owned subsidiary of Luxottica. *Id.* at ¶ 16.

Luxottica and its predecessors began using the RAY-BAN trademarks in 1937 and have continuously sold eyewear under the RAY-BAN and other trademarks. *Id.* at ¶ 7. Oakley is an internationally recognized manufacturer, distributor and retailer of sports eyewear, apparel, footwear, outerwear, jackets, accessories and other merchandise, all of which prominently display its famous, internationally-recognized and federally-registered trademarks, including OAKLEY and various Icon logos. *Id.* at ¶ 17. Plaintiffs hold registrations for their respective trademarks with the United States Patent and Trademark Office (collectively referred to herein as

---

[2] Plaintiffs' Motion for Entry of Default and Default Judgment does not apply to the following Defendants (with corresponding Second Amended Schedule A line number): 6hk9868 (line 702), abuyone (line 704), ashopone (line 709), bead-007 (line 712), china-seller86 (line 717), dealsgoing (line 727), eshop0909 (line 734), e-vanc74 (line 735), film-jewelry (line 740), goodscommunity (line 744), happyness8966 (line 753), honeystore2011 (line 756), kissbuyonline (line 767), letstouch (line 770), meetbeauty15 (line 778), moreaday (line 782), pacificrcstore (line 791), raydanet15 (line 794), sfcdirect (line 798), smilesunne (line 804), uptogethertek (line 817), wchsky2008 (line 825), and windows-7777 (line 829).

"Plaintiffs' Trademarks"). *Id*. at ¶¶ 8, and 19. Additional factual assertions regarding Plaintiffs in Paragraphs 4 – 27 of the Amended Complaint are incorporated herein. *Id*. at ¶¶ 4 – 27.

Defaulting Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial websites and online marketplaces operating under the Defendant Domain Names and Online Marketplace Accounts (collectively, the "Defendant Internet Stores") identified in Second Amended Schedule A. *Id.* at ¶ 28. Each Defaulting Defendant targets the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell unauthorized and unlicensed counterfeit products featuring counterfeits of the Plaintiffs' Trademarks (the "Counterfeit Products") to consumers within the United States, including the State of Illinois. *Id*. Additional factual assertions regarding Defaulting Defendants in Paragraphs 28 – 38 of the Amended Complaint are incorporated herein. *Id*. at ¶¶ 28 – 38.

Plaintiffs filed this action on January 14, 2016 [1] and soon thereafter filed an Amended Complaint [9]. On January 21, 2016, this Court granted Plaintiffs' *Ex Parte* Motion for Entry of a Temporary Restraining Order (the "TRO") and subsequently converted the TRO [35] to a preliminary injunction [44]. Paragraph 9 of the TRO permitted Plaintiffs to complete service of process to Defendants by electronic publication on a website to which the Defendant Domain Names which were transferred to Plaintiffs' control redirect, or by sending an e-mail to the e-mail addresses identified in Exhibits 5 and 6 to the Declaration of John J. Stewart and any e-mail addresses provided for Defendants by third parties that includes a link to said website. [35]. The Defendants were properly served on or before January 29, 2016 [39]. None of the Defaulting Defendants have filed an answer or otherwise pled in this action. *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶ 2.

3

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), Plaintiffs now move this Court for an Order entering default and default judgment finding that Defaulting Defendants are liable on all counts of Plaintiffs' Amended Complaint. Fed. R. Civ. P. 55(a) and (b)(2). Plaintiffs further seek an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against each of Defaulting Defendants for use of counterfeits of Plaintiffs' Trademarks on products sold through each of the Defendant Internet Stores. Plaintiffs also seek entry of a permanent injunction prohibiting Defaulting Defendants from selling Counterfeit Products, an Order that the domain names used by Defaulting Defendants to sell Counterfeit Products be permanently transferred to Plaintiffs, and that all assets in Defaulting Defendants' financial accounts operated by PayPal, Inc., as well as any newly discovered assets, be transferred to Plaintiffs.

## ARGUMENT

### I. JURISDICTION AND VENUE ARE PROPER IN THIS COURT

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in Illinois and causes harm to Plaintiffs' business within this Judicial District. *See* [9] at ¶¶ 2, 28, 37 and 38; *uBID, Inc. v. GoDaddy Grp., Inc*. 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary

hearing, plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive, commercial Internet websites and online marketplace accounts operating under the Defendant Internet Stores, each of the Defaulting Defendants has targeted sales from Illinois residents by operating websites and/or online marketplace accounts that offer shipping to the United States, including Illinois, and, on information and belief, has sold Counterfeit Products to consumers within the United States, including the State of Illinois. [9] at ¶ 2. Personal jurisdiction exists over Defaulting Defendants since they directly target their business activities toward consumers in the United States, including Illinois. Specifically, Defaulting Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase Counterfeit Products. [9] at ¶ 2. *See Monster Energy Co. v. Chen Wensheng, et al.*, 2015 U.S. Dist. LEXIS 132283, at *11 (N.D. Ill. September 29, 2015); *Deckers Outdoor Corp. v. Does 1-55,* No. 1:11-cv-00010 (N.D. Ill. Oct. 14, 2011) (unpublished) (Docket Nos. 68 and 69).

II.     PLAINTIFFS HAVE MET THE REQUIREMENTS FOR ENTRY OF DEFAULT

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). On January 15, 2016, Plaintiffs filed their Amended Complaint alleging federal trademark infringement and counterfeiting, 15 U.S.C. § 1114 (Count I), false designation of origin, 15 U.S.C. § 1125(a) (Count II), cybersquatting, 15 U.S.C. § 1125(d) (Count III) and

violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510 (Count IV) [9]. The Defendants were properly served on January 29, 2016 [39]. Despite having been served with process, the Defaulting Defendants have ignored these proceedings and failed to answer or otherwise plead in this action. Gaudio Declaration at ¶ 2. Upon information and belief, the Defaulting Defendants are not active-duty members of the U.S. armed forces. *Id.* at ¶ 3. Accordingly, Plaintiffs ask for entry of default against the Defaulting Defendants.

### III. PLAINTIFFS HAVE MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

As noted above, Plaintiffs served Defendants on January 29, 2016 [39]. More than twenty-one (21) days have passed since the Defaulting Defendants were served, and no answer or other responsive pleading has been filed by any of the Defaulting Defendants. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate, and consistent with previous similar cases in front of this Court, Plaintiffs request an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against each of the Defaulting Defendants for use of counterfeits of Plaintiffs' Trademarks on products sold through the

Defendant Internet Stores[3]. Plaintiffs also seek entry of a permanent injunction prohibiting Defaulting Defendants from selling Counterfeit Products, an order that domain names used by Defaulting Defendants to sell Counterfeit Products be permanently transferred to Plaintiffs, and that all assets in Defaulting Defendants' financial accounts operated by PayPal, Inc. and any newly identified accounts be transferred to Plaintiffs.

### A. Trademark Infringement and Counterfeiting, False Designation of Origin, and Violation of the Illinois Uniform Deceptive Trade Practices Act

To properly plead a claim of trademark infringement and counterfeiting pursuant to the Lanham Act, a plaintiff must allege that (1) its mark is distinctive enough to be worthy of protection, (2) defendants are not authorized to use the mark; and (3) defendant's use of the mark causes a likelihood of confusion as to the origin or sponsorship of defendant's products. *See Bliss Salon Day Spa v. Bliss World LLC,* 268 F.3d 494, 496-97 (7th Cir. 2001). This is the same test that is used for a false designation of origin claim under the Lanham Act and claims under the Illinois Uniform Deceptive Trade Practices Act. *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999); *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998).

Plaintiffs alleged in their Amended Complaint that Plaintiffs are the exclusive owners of their respective Plaintiffs' Trademarks and that Defaulting Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products bearing counterfeit reproductions of Plaintiffs' Trademarks, that Defaulting Defendants have knowledge of Plaintiffs' rights in Plaintiffs' Trademarks, that Defaulting Defendants are not authorized to use Plaintiffs' Trademarks for any

---

[3] Plaintiffs are not seeking additional statutory damages of up to $100,000 per domain name incorporating any of Plaintiffs' Trademarks to which they are also entitled for violations of 15 U.S.C. § 1125(d) (Count III), even though this was included in their prayer for relief in the Amended Complaint.

reason, and that Defaulting Defendants' use of Plaintiffs' Trademarks causes a likelihood of confusion. [9] at ¶¶ 41-42.

Plaintiffs also alleged in their Amended Complaint that Defaulting Defendants are using the Plaintiffs' Trademarks on their Counterfeit Products. [9] at ¶ 48. As such, this creates a likelihood of confusion, mistake, and deception among the general public as to the origin, sponsorship, or approval of Defaulting Defendants' Counterfeit Products by Plaintiffs. *Id*. at ¶ 47.

Plaintiffs further alleged in their Amended Complaint that Defaulting Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Products as those of Plaintiffs, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Plaintiffs' products, representing that their products have Plaintiffs' approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public. [9] at ¶ 58.

Since the Defaulting Defendants have failed to respond or otherwise plead in this matter, the Court must accept the allegations contained in Plaintiffs' Amended Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc., v. Am. Metro Taxi & Limo Co.,* 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, Plaintiffs request entry of judgment with respect to Counts I, II and IV for willful infringement and counterfeiting of Plaintiffs' Trademarks, willful false designation of origin, and willful violation of the Illinois Uniform Deceptive Trade Practices Act against the Defaulting Defendants.

**B. Cybersquatting**

In order to state a claim under the Anticybersquatting Consumer Protection Act, a plaintiff must allege that (1) it had a distinctive or famous mark at the time the domain names were registered, (2) the defendants registered, trafficked in, or used domain names that are identical to, confusingly similar to or dilutive of plaintiff's mark, and (3) the defendants had a bad faith intent to profit from that mark. 15 U.S.C. § 1125(d)(1)(A); *see also Vulcan Golf, LLC v. Google, Inc.,* 552 F. Supp. 2d 752, 763 (N.D. Ill. 2008).

Plaintiffs' Amended Complaint alleged that Plaintiffs are the exclusive owners of their respective Plaintiffs' Trademarks, registrations for which are in full force and effect, and which are distinctive and famous marks pursuant to 15 U.S.C. § 1125. [9] at ¶ 52. Plaintiffs further alleged that Defendants operating a Defendant Domain Name incorporating any of Plaintiffs' Trademarks have acted with bad faith intent to profit from the unauthorized use of Plaintiffs' Trademarks and the goodwill associated therewith by registering, trafficking in, or using various domain names which are identical to, confusingly similar to, or dilutive of Plaintiffs' Trademarks. *Id.* at ¶ 53. As such, Plaintiffs request entry of judgment against the Defaulting Defendants with respect to Count III for willful cybersquatting as to the Defaulting Defendants operating domain names incorporating any of Plaintiffs' Trademarks.

### IV. <u>PLAINTIFFS ARE ENTITLED TO MONETARY AND INJUNCTIVE RELIEF</u>

The awarding of statutory damages serves dual interests in that it is remedial in nature, but also intended to protect an important public interest. Given the broader economic losses and harm to the job market caused by counterfeiting, coupled with the possible dangers to consumers who are tricked into purchasing low quality, counterfeit products over the Internet, it is important to both penalize defendants and try to deter future violations.

Plaintiffs have expended substantial time, money, and other resources in developing, advertising and otherwise promoting Plaintiffs' Trademarks. [14] at ¶¶ 11 and 23. As a result, Plaintiffs' Products bearing Plaintiffs' Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiffs. *Id*. The overwhelming success of Plaintiffs' respective brands has resulted in their significant counterfeiting, so Plaintiffs have a worldwide anti-counterfeiting program and regularly investigate suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. *Id*. at ¶ 26.

### A. Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

The lack of information regarding Defaulting Defendants' sales and profits makes statutory damages particularly appropriate for default cases like the instant case. *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *9, (N.D. Ill. 2004) (citing S. Rep. No. 177, 104th Cong. 1995). Likewise, Courts have recognized that statutory damages should be awarded without requiring an evidentiary hearing. *See Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 31761, *11 (N.D. Ill. Apr. 17, 2008).

### B. Defaulting Defendants' Counterfeiting Was Willful

As alleged in Plaintiffs' Amended Complaint, Defaulting Defendants facilitated sales by designing the Defendant Internet Stores so that they appeared to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Plaintiffs' Products. [9] at ¶ 31. Pursuant to 15 U.S.C. § 1117(e), a counterfeiting violation is presumed willful "for purposes of determining relief if the violator ... knowingly provided ... materially false contact information to a domain name registrar...." 15 U.S.C. § 1117(e). Many of Defaulting Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. [9] at ¶ 33. Thus, willfulness is presumed in the instant case under 15 U.S.C. § 1117(e).

Even without the statutory presumption, it is clear that Defaulting Defendants' counterfeiting was willful. "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.,* 2004 LEXIS 22563, *19-20 (N.D. Ill. Feb. 25, 2005). As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id.* at 20. In the instant case, Defaulting Defendants clearly had knowledge that their activities constituted infringement or at least a reckless disregard for Plaintiffs' rights in Plaintiffs' Trademarks. [9] at ¶¶ 31, 33, 34; *see also* [18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, and 29].

Finally, District Courts have deemed counterfeiting willful when defendants default. *See Burberry Limited, et al. v. The Partnerships, et al,* No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45); *Oakley, Inc. v. The Partnerships, et al.,* No. 1:13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37).

**C. A High Statutory Damages Award Is Appropriate and Just**

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *10; *Luxottica USA LLC v. The Partnerships, et al.,* 2015 U.S. Dist. LEXIS 78961, *5 (N.D. Ill. 2015); *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion." *Id*. In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id*. Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, *16.

In addition, courts have awarded high damage amounts where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. *See Coach, Inc. v. Ocean Point Gifts*, 2010 U.S. Dist. LEXIS 59003, *15-16 (D.N.J. Jun. 14, 2010) (high damage awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide"); *Burberry Ltd. v. Designers Imports, Inc.*, 2010 U.S. Dist. LEXIS

3605, *28-29 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast customer base through internet advertising").

In similar cases involving willful Internet-based counterfeiting, courts have awarded significant damages, including up to the maximum provided by law, to the plaintiff to serve the purposes of: (1) deterring the defendant and others situated like him from bringing into commerce counterfeit goods, (2) compensating the plaintiff for damages caused by defendant's infringement, and (3) punishing the defendant appropriately for his counterfeiting activities. *See, e.g., Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003); *Burberry Limited, et al. v. The Partnerships, et al,* No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45) (awarding $2,000,000 in statutory damages per defendant); *Oakley, Inc. v. The Partnerships, et al.,* No. 1:13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37) (awarding $2,000,000 in statutory damages per defendant). Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), Plaintiffs respectfully request the Court's entry of an award of two hundred thousand dollars ($200,000) per Defaulting Defendant.

Additionally, the remedy imposed under the statute must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340, 1348 (7th Cir. 1994). For example, in *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to, "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." 2005 U.S. Dist. LEXIS 40359, *28 (E.D.N.Y.

Aug. 26, 2005).

Finally, in determining an appropriate damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [Plaintiffs' respective brands] and the efforts taken to protect, promote and enhance [those brands]." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *16. Plaintiffs have expended substantial time, money, and other resources in developing, advertising and otherwise promoting Plaintiffs' Trademarks. [14] at ¶¶ 11 and 23. Thus, Plaintiffs' request for a high statutory damages award should be given favorable consideration in view of the value of Plaintiffs' respective brands and the extensive steps being taken by Plaintiffs to protect, promote and enhance those brands.

### D. Plaintiffs Are Entitled to Permanent Injunctive Relief

In addition to the foregoing relief, Plaintiffs respectfully request entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating Plaintiffs' registered trademark rights in Plaintiffs' Trademarks, including at least all injunctive relief previously awarded by this Court to Plaintiffs in the TRO and Preliminary Injunction. Plaintiffs are also entitled to injunctive relief so they can quickly take action against any new websites and online marketplace accounts that are identified, found to be linked to Defaulting Defendants, and selling Counterfeit Products. *See Burberry Limited, et al. v. The Partnerships, et al,* No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45); *Oakley, Inc. v. The Partnerships, et al.,* No. 1:13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37).

## CONCLUSION

Plaintiffs respectfully request that the Court enter default and default judgment against each Defaulting Defendant, award statutory damages in the amount of two hundred thousand

14

dollars ($200,000) per Defaulting Defendant pursuant to 15 U.S.C. § 1117(c) and enter a permanent injunction order prohibiting Defaulting Defendants from selling Counterfeit Products, permanently transferring the domain names used by Defaulting Defendants to sell Counterfeit Products to Plaintiffs, and transferring all assets in Defaulting Defendants' financial accounts operated by PayPal, Inc. to Plaintiffs.

Dated this 22nd day of February 2016.   Respectfully submitted,

/s/ Justin R. Gaudio_____
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
kguynn@gbclaw.net
aziegler@gbclaw.net
jgaudio@gbclaw.net
jbloodgood@gbclaw.net

*Counsel for Plaintiffs*
*Luxottica Group S.p.A and Oakley, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of February 2016, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, I will electronically publish the documents on a website to which the Defendant Domain Names that have been transferred to Plaintiffs' control now redirect, and I will send an e-mail to the e-mail addresses identified in Exhibits 5 and 6 to the Declaration of John J. Stewart and any e-mail addresses provided for Defendants by third parties that includes a link to said website.

/s/ Justin R. Gaudio
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbclaw.net
aziegler@gbclaw.net
jgaudio@gbclaw.net
jbloodgood@gbclaw.net

*Counsel for Plaintiffs*
*Luxottica Group S.p.A and Oakley, Inc.*