**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LUXOTTICA GROUP S.p.A.<br>and OAKLEY, INC., | ) | Case No. 16-cv-00487 |
| | ) | |
| Plaintiffs, | ) | **Judge Manish S. Shah** |
| | ) | |
| v. | ) | **Magistrate Judge Sheila Finnegan** |
| | ) | |
| HAO LI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT AND A STATUTORY DAMAGES AWARD AS TO THE
DEFENDANT IDENTIFIED BY AND OPERATING AT LEAST THE INTERNET
STORES DEALSGOING, SFCDIRECT AND UPTOGETHERTEK**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

    A.   Luxottica's WAYFARER Trademark ................................................. 3

    B.   Defendant's Unlawful Activities ........................................................ 3

    C.   Procedural History ............................................................................. 4

II.   ARGUMENT ...................................................................................................... 5

    A.   Summary Judgment Standard .............................................................. 5

    B.   Luxottica Is Entitled to Summary Judgment Against Defendant on Its Trademark Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims . ............................................................................................................... 5

         i.    The WAYFARER Trademark Is Federally Registered and Incontestable ....... 7

         ii.   Defendant Advertised and/or Offered to Sell Goods Using the WAYFARER Trademark in Commerce without Luxottica's Authorization .......................... 7

         iii.  Defendant's Use of the Counterfeit WAYFARER Trademark Causes a Likelihood of Confusion and Infringes as a Matter of Law .............................. 7

III.  LUXOTTICA IS ENTITLED TO STATUTORY DAMAGES ........................................ 12

    A.   Statutory Damages Are Appropriate in this Case ...................................... 12

    B.   Defendant's Wide Exposure over the Internet Merits a Substantial Statutory Damages Award .................................................................................... 15

    C.   The Value of the WAYFARER Trademark Justifies a High Statutory Damages Award ............................................................................................. 17

    D.   The Requested Statutory Damages Award Must Sufficiently Deter Defendant and Similar Online Counterfeit Sellers ................................................................ 18

IV.  LUXOTTICA IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF ................... 19

V.   LUXOTTICA IS ENTITLED TO ATTORNEY'S FEES AND COSTS ......................... 19

VI.  CONCLUSION ................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................... 5

*AutoZone, Inc. v. Strick*,
   543 F.3d 923 (7th Cir. 2008) ...................................................................... 10

*Bulgari, S.p.A. v. Zou Xiaohong, et al.*,
   2015 U.S. Dist. LEXIS 140606 (N.D. Ill. Oct. 15, 2015).......................... 1, 13, 16, 18, 19

*Burberry Ltd. v. Designers Imps., Inc.*,
   No. 07-cv-3997, 2010 U.S. Dist. LEXIS 3605 (S.D.N.Y. Jan. 19, 2010) ....... 17

*CAE, Inc. v. Clean Air Eng'g Inc.*,
   267 F.3d 660 (7th Cir. 2001) ................................................................. 9, 10, 11

*Chi-Boy Music v. Charlie Club*,
   930 F.2d 1224 (7th Cir. 1991) ..................................................................... 15

*Chloe SAS v. Sawabeh Info. Servs. Co*,
   2014 U.S. Dist. LEXIS 124433 (C.D. Cal. Sept. 5, 2014)............................ 8, 11

*Door Sys. v. Pro-Line Door Sys.*,
   83 F.3d 169 (7th Cir. 1996) ......................................................................... 10

*Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*,
   No. 03-cv-5506, 2005 U.S. Dist. LEXIS 26626 (N.D. Ill. Oct. 27, 2005) ........ 15

*Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*,
   No. 03-cv-4986, 2004 U.S. Dist. LEXIS 22563 (N.D. Ill. Nov. 5, 2004) ....... 12, 13

*Louis Vuitton Malletier, et al. v. Veit*,
   211 F. Supp. 2d 567 (E.D. Pa. 2002) ............................................................ 17

*Louis Vuitton Malletier, S.A. v. Mosseri*,
   No. 07-cv-2620, 2009 U.S. Dist. LEXIS 100851 (D.N.J. Oct. 28, 2009) ........ 16

*Louis Vuitton S.A. v. Pun Yang Lee*,
   875 F.2d 584 (7th Cir. 1989) ........................................................................ 14

*Luxottica Group S.p.A. v. Li Hui, et al.*,
   No. 1:15-cv-06977 (N.D. Ill. Sept. 29, 2015) ............................................... 19

iii

*Luxottica USA LLC v. The Partnerships, et al.*,
  2015 U.S. Dist. LEXIS 78961 (N.D. Ill. June 18, 2015) ................................. 1, 16, 18, 19

*Microsoft Corp. v. Rechanik*,
  249 F. App'x 476 (7th Cir. 2007) .............................................................. 10, 13

*Monster Energy Company v. Meng Chun Jing, et al.*,
  2015 U.S. Dist. LEXIS 86956 (N.D. Ill. July 6, 2015) ................................... 13

*Neopost Industrie B.V. v. PFE Int'l Inc.*,
  403 F. Supp. 2d 669 (N.D. Ill. 2005) ............................................................ 6

*Packaging Supplies, Inc. v. Harley-Davidson, Inc.*,
  2011 WL 1811446 (N.D. Ill. May 12, 2011) ................................................. 6

*Packman v. Chi. Tribune Co.*,
  267 F.3d 628 (7th Cir. 2001) ....................................................................... 5

*Phillip Morris USA Inc. v. Marlboro Express*,
  No. 03-cv-1161, 2005 U.S. Dist. LEXIS 40359 (E.D.N.Y. Aug. 26, 2005) .................. 18

*Rolex Watch U.S.A., Inc. v. Jones*,
  No. 99-cv-2359, 2002 U.S. Dist. LEXIS 6657 (S.D.N.Y. Apr. 17, 2002) ...................... 16

*Sara Lee v. Bags of New York, Inc.*,
  36 F. Supp. 2d 161 (S.D.N.Y. 1999) ......................................................... 14, 15

*Tiffany & Co. v. Costco Wholesale Corp.*,
  2015 U.S. Dist. LEXIS 119319 (S.D.N.Y. Sep. 8, 2015) ............................... 7, 11

*Tiffany (NJ) LLC v. Dong*, No. 11-cv-2183,
  2013 U.S. Dist. LEXIS 114986 (S.D.N.Y. Aug. 9, 2013) .............................. 15

*Tony Jones Apparel, Inc. v. Indigo USA, LLC*,
  2005 U.S. Dist. LEXIS 14649 (N.D. Ill. July 11, 2005) ................................. 19

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
  505 U.S. 763 (1992) ..................................................................................... 6

**Statutes**

15 U.S.C. § 1057(b) .......................................................................................... 6

15 U.S.C. § 1065 ........................................................................................... 3, 6

15 U.S.C. § 1114(1) ........................................................................................ 5

15 U.S.C. § 1115(a) ......................................................................................... 6

15 U.S.C. § 1115(b) ................................................................................................. 3, 6

15 U.S.C. § 1116(a) .............................................................................................. 17, 18

15 U.S.C. § 1117(b) .............................................................................................. 17, 18

15 U.S.C. § 1117(c) ...................................................................................... 9, 10, 12, 16

15 U.S.C. § 1117(c)(1) ............................................................................................... 10

15 U.S.C. § 1117(c)(2) .......................................................................................... 10, 16

15 U.S.C. § 1125(a)(1) ................................................................................................ 5

15 U.S.C. § 1127 ........................................................................................................ 7

17 U.S.C. § 504(c) ..................................................................................................... 12

Fed. R. Civ. P. 56(a) .................................................................................................. 4

## MEMORANDUM

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiffs Luxottica Group S.p.A. and Oakley, Inc.[1] (collectively, "Luxottica" or "Plaintiffs") submit this Motion for Summary Judgment and a Statutory Damages Award as to the Defendant identified by and operating at least the Internet stores dealsgoing, sfcdirect and uptogethertek ("Defendant")[2], which is advertising and offering for sale products using counterfeit reproductions of Luxottica's federally registered, famous and well-known WAYFARER trademark through the fully interactive, commercial Internet eBay stores dealsgoing, sfcdirect and uptogethertek (the "Defendant Internet Stores"). In recent similar cases in this District, Courts entered summary judgment in favor of the trademark owners, found willful infringement and trademark counterfeiting, and awarded substantial six-figure statutory damages awards. *Bulgari, S.p.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *7 (N.D. Ill. Oct. 15, 2015) (awarding $100,000 for three represented sales); *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-10 (N.D. Ill. June 18, 2015) ($150,000 awarded for three infringed marks, holding that even though there was no evidence submitted that defendant was a "large-scale counterfeiter," defendant's online sale of counterfeit goods made plaintiff's actual losses difficult to calculate and justified a substantial award).

## I.    INTRODUCTION

Plaintiff Luxottica is engaged in the business of producing, manufacturing and distributing throughout the world, including within this judicial district, premium, luxury and sports eyewear

---

[1] Oakley, Inc. ("Oakley"), is an indirect, wholly-owned subsidiary of Luxottica.

[2] Defendant is also operating the Internet store royalwaytrade, which was sued in *Richemont International SA, et al. v. Luo Liang, et al.*, No. 16-cv-01227 (N.D. Ill. Mar. 17, 2016). Counsel for Luxottica also represents Plaintiffs in the *Richemont* action.

products under federally registered trademarks. Specifically, Luxottica and its predecessors have been selling eyewear under the WAYFARER mark since 1956, and WAYFARER brand sunglasses have been noted by *Wired Magazine* as "one of the first things that come to mind when people think of sunglasses." Declaration of John J. Stewart (the "Stewart Declaration") at ¶ 3. The sunglasses sold under Luxottica's WAYFARER mark quickly became a favorite among notable celebrities of the 1950s and 1960s, such as James Dean, Marilyn Monroe, Cary Grant, Andy Warhol, and Bob Dylan, and have been touted by *Wired Magazine* as "among the first sunglasses made for both seeing and being seen." *Id*. WAYFARER sunglasses have been recognized by *CNN*, *The Globe and Mail,* and *Fashionista* as "a classic of modern design," a "hipster staple," "eternal," and "iconic," having "ridden the waves of fashion in timeless style." *Id*. at ¶ 4. *Fashionista* has even noted that "Wayfarers will outlive us all," and *AdWeek* noted that "[t]he cultural impetus of Wayfarers is now unstoppable." *Id*. *New York Magazine's The Cut* included the "Ray-Ban Wayfarers" in its collection of the "50 Most Iconic Sunglasses of All Time," stating that the sunglasses were "[a]rguably the most iconic of shades." *Id*.

The timelessness and popularity of the eyewear sold under the WAYFARER mark is due in large part to their ubiquity in pop culture. In 1982, Luxottica's predecessors signed a lucrative product placement deal which started a WAYFARER brand sunglasses phenomenon. *Id*. at ¶ 5. WAYFARER sunglasses appeared on Tom Cruise in 1983's Risky Business, as well as in the movies and television shows such as Miami Vice, Moonlighting, and the Breakfast Club. *Id*. These television and movie appearances of the WAYFARER brand sunglasses helped sales to reach 1.5 million by the mid-1980s. *Id*. WAYFARER brand sunglasses experienced a renewed surge in popularity in the late 2000s, after appearances in the 2008 film *Twilight* and Katy Perry's 2010 "Teenage Dream" music video, and on fashion forward celebrities such as Chloë Sevigny

2

and Mary-Kate Olsen. *Id*. at ¶ 6. As such, the WAYFARER trademark is a famous and valuable asset of Luxottica.

Luxottica moves for summary judgment against Defendant for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA") (Count IV). There is no genuine issue of material fact as to whether Defendant is engaged in advertising and offering for sale unauthorized sunglasses using counterfeit reproductions of the WAYFARER trademark on the Defendant Internet Stores. Further, Luxottica requests that this Court include a finding that the Defendant's conduct was willful and award statutory damages in the amount of at least ninety thousand dollars ($90,000).

## A. Luxottica's WAYFARER Trademark

Luxottica holds numerous U.S. federal trademark registrations for its trademarks, including U.S. Registration No. 595,513 for the WAYFARER mark (hereinafter, the "WAYFARER Trademark"). Plaintiffs' Rule 56.1 Statement of Undisputed Facts at ¶ 1 ("Rule 56.1 Statement"). The registration for the WAYFARER Trademark is valid, subsisting, and in full force and effect. *Id*. Pursuant to 15 U.S.C. § 1065, the WAYFARER Trademark is incontestable. *Id*. Incontestable status under 15 U.S.C. § 1065 provides that the registration for the WAYFARER Trademark is conclusive evidence of the validity of Luxottica's registered trademark and of the registration of the mark, of Luxottica's ownership of the trademark, and of Luxottica's exclusive right to use the mark in commerce. *Id.*; 15 U.S.C. §§ 1115(b), 1065.

## B. Defendant's Unlawful Activities

Defendant's counterfeiting operation consists of multiple Online Marketplace Accounts, including the eBay Internet Stores dealsgoing, sfcdirect and uptogethertek (defined above as the "Defendant Internet Stores"), and using multiple different PayPal accounts to sell products over

3

the Internet to the United States, including Illinois residents.  Rule 56.1 Statement at ¶ 6.  Through the Online Marketplace Accounts, Defendant was using plain text counterfeit versions of Luxottica's federally registered WAYFARER Trademark to advertise, offer for sale and sell products not authorized, licensed or manufactured by Luxottica.[3]  *Id*. at ¶¶ 2-5.  Specifically, Defendant offered for sale unauthorized sunglasses using counterfeits of the WAYFARER Trademark for $2.26 - $2.36 USD.  *Id*.  Defendant identified the products in the product title section as "Vintage 1980's Wayfarer Fashion Sunglasses Dark Lens Black Frame Unisex," "Fashion Sunglasses Wayfarer Style Black Frame w/ Dark Lens Retro Square Glasses," and "Vintage 1980's Wayfarer Fashion Sunglasses Dark Lens Black Frame Mens Womens" in the product title.  *Id*. at ¶¶ 2-4.  Luxottica examined the images of the sunglasses shown on the Defendant Internet Stores and determined the products were not licensed or authorized by Luxottica, and therefore counterfeit.  *Id*.  Luxottica's investigator purchased products offered for sale on each of the Defendant Internet Stores.  *Id*.  Luxottica has not authorized or licensed the Defendant to use the WAYFARER Trademark on the Defendant Internet Stores.  *Id.* at ¶ 5.  Defendant is not an authorized retailer of genuine Luxottica Products, and the products offered for sale using the WAYFARER Trademark on the Defendant Internet Stores are not genuine Luxottica Products.  *Id.*

C.     **Procedural History**

Luxottica filed this action on January 14, 2016, alleging claims relating to federal trademark infringement and counterfeiting, and seeking statutory damages and injunctive relief against Defendant.  [1, 9].   This Court granted an injunction against Defendant on January 21,

---

[3] Since Defendant is using the WAYFARER Trademark in the product title on the Defendant Internet Stores, Luxottica does not take a position as to whether the physical sunglasses sold by Defendant bore any counterfeit trademarks for the purposes of this Motion.

4

2016, finding that Luxottica demonstrated, among other things, a strong likelihood of success on the merits of its trademark infringement and counterfeiting claims.[4]  [35].  Defendant filed an Answer [59] to Luxottica's Amended Complaint on March 3, 2016.  The Court entered Default and Default Judgment [54] (awarding statutory damages of two hundred thousand dollars ($200,000) per defendant) against defaulting defendants on February 25, 2016, with the exception of Defendant (among other excepted defendants).

## II.     ARGUMENT

### A.     Summary Judgment Standard

A district "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   The district court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001).  A genuine dispute as to any material fact only exists if a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.     Luxottica Is Entitled to Summary Judgment Against Defendant on Its Trademark Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce, any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive."  15 U.S.C. § 1114(1).   Section 43(a) of the Lanham

---

[4] The Temporary Restraining Order [35] was subsequently converted to a Preliminary Injunction [44] on February 2, 2016.

Act further imposes liability upon a defendant who "on or in connection with any goods or services ... uses in commerce any ... false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which is likely to cause confusion or to cause mistake, or to deceive as to the ... origin, sponsorship, or approval of his or her goods ... by another person."  15 U.S.C. § 1125(a)(1).  Under the UDTPA, a defendant is liable for, among other things, (1) passing off goods as those of another; (2) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods; or (3) causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another.  815 Ill. Comp. Stat. 510/2(a).

For a *prima facie* case of infringement, Luxottica must show that (1) the WAYFARER Trademark is distinctive enough to be worthy of protection; (2) Defendant is not authorized to use the WAYFARER Trademark; and (3) Defendant's use of the WAYFARER Trademark causes a likelihood of confusion as to the origin or sponsorship of Defendant's products.  *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted).  Luxottica satisfies all three requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim.  Luxottica's Section 43(a) Lanham Act and UDTPA claims involve the same elements.  *See Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, 2011 WL 1811446, at *5 (N.D. Ill. May 12, 2011).  Moreover, "the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks ....  [w]hether we call the violation infringement, unfair competition or false designation of origin, the test is identical – is there a likelihood of confusion?"  *Two Pesos, Inc. v. Taco Cabana,  Inc.*, 505 U.S. 763, 780 (1992) (internal citations omitted).

        i.      <u>The WAYFARER Trademark Is Federally Registered and Incontestable</u>

Regarding the first element, Luxottica's WAYFARER Trademark is registered with the United States Patent and Trademark Office on the Principal Register. Rule 56.1 Statement at ¶ 1. The issuance of a federal registration on the Principal Register constitutes *prima facie* evidence of the validity of Luxottica's registered trademark and of the registration of the mark, of Luxottica's ownership of the trademark, and of Luxottica's exclusive right to use the mark in commerce. 15 U.S.C. §§ 1115(a), 1057(b).

Pursuant to 15 U.S.C. § 1065, the WAYFARER Trademark is incontestable. Rule 56.1 Statement at ¶ 1. Incontestable status under 15 U.S.C. § 1065 provides that the registration for the WAYFARER Trademark is conclusive evidence of the validity of Luxottica's registered trademark and of the registration of the mark, of Luxottica's ownership of the trademark, and of Luxottica's exclusive right to use the mark in commerce. 15 U.S.C. §§ 1115(b), 1065.

Therefore, there can be no genuine issue of material fact as to whether Luxottica has valid and exclusive rights in the WAYFARER Trademark.

        ii.     <u>Defendant Advertised and/or Offered to Sell Goods Using the WAYFARER Trademark in Commerce without Luxottica's Authorization</u>

Defendant advertised and offered for sale products using the WAYFARER Trademark via the Defendant Internet Stores. Defendant is not an authorized retailer of genuine Luxottica Products, and the products offered for sale using the WAYFARER Trademark on the Defendant Internet Stores are not genuine Luxottica Products. Rule 56.1 Statement at ¶ 5.

        iii.    <u>Defendant's Use of the Counterfeit WAYFARER Trademark Causes a Likelihood of Confusion and Infringes as a Matter of Law</u>

The below screenshots from the Defendant Internet Stores show that Defendant's unauthorized marks are spurious marks which are identical with, or substantially indistinguishable

from, the registered WAYFARER Trademark, and thus are counterfeit. 15 U.S.C. § 1127 (definition of "counterfeit"). Defendant used the WAYFARER Trademark in connection with the sale of goods. 15 U.S.C. 1114(1)(a) (prohibiting the use in advertising of any goods or services on or in connection with a protected mark). *See also Tiffany & Co. v. Costco Wholesale Corp.*, 2015 U.S. Dist. LEXIS 119319, at *33 (S.D.N.Y. Sep. 8, 2015) (Confirming that there is no statutory requirement that the counterfeit mark be placed on the product itself, and finding defendant liable for counterfeiting for using the word "Tiffany" displayed on signs next to rings stamped with generic marks); *Chloe SAS v. Sawabeh Info. Servs. Co*, 2014 U.S. Dist. LEXIS 124433, at *18 (C.D. Cal. Sept. 5, 2014) (finding that using a trademark in the product title constitutes trademark counterfeiting and confirming that "a protected mark need not appears 'on' the good offered for sale; it must only be used 'in connection with' the sale").



**Genuine Luxottica WAYFARER Sunglasses**

**Defendant Internet Stores**



Stewart Declaration at ¶ 7; Declaration of Allyson Martin ("Martin Declaration") at ¶¶ 3-5.

In a trademark infringement case, likelihood of consumer confusion is ordinarily a question

of fact. *CAE, Inc. v. Clean Air Eng'g Inc.,* 267 F.3d 660, 677 (7th Cir. 2001) (citations omitted).

9

However, "if the evidence is so one-sided that there can be no doubt about how the question should be answered," the question of whether likelihood of confusion exists may be resolved on summary judgment. *Id.* (citing *Door Sys. v. Pro-Line Door Sys.*, 83 F.3d 169, 173 (7th Cir. 1996)).

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendant's use of the WAYFARER Trademark.

The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and, (7) the intent of the defendant to "palm off" his products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Luxottica has submitted documentation showing that Defendant is using the word Wayfarer in the product title, where a brand name would normally appear, to sell sunglasses not manufactured or licensed by Luxottica. Rule 56.1 Statement at ¶¶ 2-5; Martin Declaration at ¶¶ 3-5. Both Luxottica and Defendant advertise and sell their products over the Internet, targeting consumers searching for genuine Luxottica Products. [14] at ¶ 13; Rule 56.1 Statement at ¶¶ 2-4. Additionally, Luxottica has submitted documentation that Defendant used the word Wayfarer in the product title in a similar manner to how Luxottica uses the WAYFARER Trademark to sell

genuine Luxottica products on ray-ban.com. *See* Stewart Declaration at ¶ 7. Defendant presented the word Wayfarer on the Defendant Internet Stores in a plain, unadorned, upper-and-lower case typeface. Martin Declaration at ¶¶ 3-5. Thus, those consumers searching for genuine Luxottica products (who are diverse with varying degrees of sophistication) are likely to have difficulty distinguishing genuine Luxottica Products from Defendant's products not licensed or manufactured by Luxottica. This is particularly true in this case where the Defendant's products are sold on the Internet and consumers cannot inspect the physical product. In that regard, Defendant advertises and offers to sell products that copy the style of genuine Luxottica Products and use the WAYFARER Trademark. Rule 56.1 Statement at ¶¶ 2-4. Defendant also used keywords such as "Vintage 1980's," "Fashion Sunglasses," and "Retro" in the product titles, suggesting similarity of its products to genuine Luxottica eyewear sold under the WAYFARER Trademark. *Id*. *See Chloe SAS*, 2014 U.S. Dist. LEXIS 124433, at *18 ("this conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting").

Luxottica does not need to prove actual consumer confusion; rather it only needs to show a likelihood of confusion exists, particularly given the compelling evidence that Defendant is attempting to "palm off" their goods as genuine Luxottica Products by using the WAYFARER Trademark. *CAE, Inc. v. Clean Air Eng'g, Inc*., 267 F.3d 660, 685 (7th Cir. 2001). Thus, Defendant's use of the WAYFARER Trademark in connection with the sale of unauthorized goods created a likelihood of confusion. *See Tiffany & Co.*, 2015 U.S. Dist. LEXIS 119319, at *33 (finding likelihood of confusion where the word "Tiffany" was displayed on signs next to rings stamped with generic marks); *Chloe SAS*, 2014 U.S. Dist. LEXIS 124433, at *18-19 (finding defendant liable for use of a protected word mark in Internet sale listing).

11

## III. LUXOTTICA IS ENTITLED TO STATUTORY DAMAGES

There is no genuine issue of material fact as to whether Defendant has infringed the WAYFARER Trademark through its willful and international trademark counterfeiting. Further, there is no genuine issue of material fact as to whether Defendant's infringement was willful, because Defendant knew it was infringing the WAYFARER Trademark or, at a minimum, had a reckless disregard for Luxottica's rights. As such, Luxottica elects to recover an award of statutory damages as authorized by 15 U.S.C. § 1117(c) for trademark counterfeiting for Defendant's sale of products using counterfeit reproductions of the WAYFARER Trademark.

The awarding of statutory damages serves dual interests in that it is remedial in nature, but also intended to protect an important public interest. *Sands, Taylor & Wood,* 34 F.3d at 1347-48. Given the broader economic losses and harm to the job market caused by counterfeiting, coupled with the possible dangers to consumers who are tricked into purchasing low quality, counterfeit products over the Internet, it is important to both penalize defendants and try to deter future violations. *Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*, No. 03-cv-4986, 2004 U.S. Dist. LEXIS 22563, *18 (N.D. Ill. Nov. 5, 2004). Accordingly, Luxottica respectfully requests the Court's entry of an award in the amount of at least ninety thousand dollars ($90,000) against the Defendant for willful counterfeiting of the WAYFARER Trademark.

### A. Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court

12

considers just." 15 U.S.C. § 1117(c)(2). "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563 at *19-20; *Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *10 (N.D. Ill. July 6, 2015). As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id.* at 20.

Luxottica has expended substantial time, money, and other resources in advertising and promoting its trademarks, including the WAYFARER Trademark. [14] at ¶ 11. In fact, Luxottica has expended millions of dollars annually in advertising, promoting and marketing featuring its trademarks. *Id.* Eyewear sold under the WAYFARER Trademark has been the subject of extensive unsolicited publicity and has been recognized by *CNN*, *The Globe and Mail*, *Fashionista*, and *Wired Magazine* as "a classic of modern design," a "hipster staple," "eternal," and "iconic," having "ridden the waves of fashion in timeless style." Stewart Declaration at ¶ 4. Furthermore, eyewear sold under the WAYFARER Trademark is ubiquitous in pop culture, with countless celebrity and movie appearances. *Id.* at ¶¶ 5-6. As a result, products sold under the WAYFARER Trademark are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Luxottica. Thus, Defendant's use of the WAYFARER Trademark had to be willful, because products sold under the WAYFARER Trademark are widely recognized and associated exclusively with Luxottica. *See Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *10 (N.D. Ill. July 6, 2015); *Bulgari, S.p.A. v. Zou Xiaohong*, *et al.*, 2015 U.S. Dist. LEXIS 140606, at *6. Further, a search by Defendant of "WAYFARER" on Google or the United States Patent and

Trademark Office website would have quickly revealed Luxottica's rights in the WAYFARER Trademark.

In addition, Defendant copied the style of genuine sunglasses sold by Luxottica under the WAYFARER Trademark, and offered its products at prices well below the market prices for genuine Luxottica sunglasses sold under the WAYFARER Trademark, which also indicates willful counterfeiting. Rule 56.1 Statement at ¶¶ 2-4; Stewart Declaration at ¶ 7. *See Louis Vuitton S.A. v. Pun Yang Lee*, 875 F.2d 584, 589 (7th Cir. 1989) ("manufacturers of high-fashion leather goods do not distribute them to retail outlets through itinerant peddlers, do not line the goods with purple vinyl, and do not sell them at prices which permit the retailer to make money reselling them for $37.80."). Defendant purposefully identified the products using the WAYFARER Trademark where the brand manufacturer's name would commonly be located. Also, Defendant strategically described the products using keywords such as "Vintage 1980's," "Fashion Sunglasses," and "Retro," further indicating Defendant's awareness of the WAYFARER brand and that it was attempting to pass off its products as genuine eyewear sold under the WAYFARER Trademark. Rule 56.1 Statement at ¶¶ 2-4.

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, *10; *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th

14

Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion." *Id*. In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id*. Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563 at *16.

Further, because damages inquiries under Section 1117(c) consider both punitive and compensatory considerations, "there is no necessary mathematical relationship between the size of such an award and the extent or profitability of the defendant's wrongful activities." *Sara Lee*, 36 F. Supp. 2d at 165. Thus, courts have looked beyond restitution of profit and restoration of injury to award damages, holding that deterrence of future infringement by the defendant and others situated like him is an important factor. *Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*, No. 03-cv-5506, 2005 U.S. Dist. LEXIS 26626, *16 (N.D. Ill. Oct. 27, 2005). Courts have also held that damages awards limited to lost profits would have little to no deterrent effect on future violations – "a counterfeiter must fear more than just having to turn over his ill-gotten gains to the rightful owners." *See Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563 at *17.

## B. Defendant's Wide Exposure over the Internet Merits a Substantial Statutory Damages Award

Defendant's ability to reach a vast customer base by willfully advertising and offering for sale products using the WAYFARER Trademark over the Internet on the eBay marketplace platform merits a substantial statutory damages award. Defendant has the ability to "reach a virtually limitless number of potential customers worldwide." *Tiffany (NJ) LLC v. Dong*, No. 11-cv-2183, 2013 U.S. Dist. LEXIS 114986, *17 (S.D.N.Y. Aug. 9, 2013) (awarding a total of $9

million in statutory damages, noting defendant's vast customer base).  Defendant is able to reach a large base of active buyers with the eBay platform.  As of December 31, 2015, the eBay marketplace had more than 162 million active buyers.  Martin Declaration at ¶ 2.  Courts in this District have also recognized the ability for online marketplace sellers to reach a vast customer base and this effect on statutory damages.  *See Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *11 (holding that AliExpress "is a busy website that provides the potential to reach a vast customer base."); *Bulgari, S.p.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *7 ("[i]t is difficult for Bulgari to prove actual damages because the internet platform Li used, AliExpress.com, is a popular website reaching a vast customer base."). As such, a substantial statutory damages award is justified, and in similar cases involving willful Internet-based counterfeiting, courts often award high damages awards due to wide market exposure.  *See Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-10 (N.D. Ill. June 18, 2015) ($150,000 awarded for three infringed marks based on defendant's online sale of counterfeit goods); *Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *13 (awarding statutory damages of $1 million); *Rolex Watch U.S.A., Inc. v. Jones*, No. 99-cv-2359, 2002 U.S. Dist. LEXIS 6657, at *16 (S.D.N.Y. Apr. 17, 2002) (holding that an award of $25,000 for each category of trademarked goods would be inadequate in view of the virtually limitless number of available customers on the Internet, distinguishing cases where defendants had "storefront operations," and noting that one of defendant's websites had more than 90,000 visitors); *Louis Vuitton Malletier, S.A. v. Mosseri*, No. 07-cv-2620, 2009 U.S. Dist. LEXIS 100851, *9 (D.N.J. Oct. 28, 2009) (awarding over $4 million in total statutory damages, finding that defendant's operation of its counterfeit goods enterprise on the Internet exponentially increased the damages); *Louis Vuitton Malletier, et al. v. Veit*, 211 F. Supp. 2d 567, 584-85 (E.D.

Pa. 2002) (awarding $1,500,000 total and stating "the point of sale is very relevant to the statutory damages discussion" because "143 million Americans use the internet and represent the counterfeiter's potential customer base"); *Burberry Ltd. v. Designers Imps., Inc.*, No. 07-cv-3997, 2010 U.S. Dist. LEXIS 3605, *28 (S.D.N.Y. Jan. 19, 2010) (Court awarded $1,500,000 in statutory damages representing $100,000 per mark per type of goods, finding that a large award was necessary because of "defendant's ability to reach a vast customer base through internet advertising").

Thus, Luxottica's request for a high statutory damages award should be given favorable consideration in view of the Defendant's wide market exposure and ability to reach a vast customer base over the Internet.

### C. The Value of the WAYFARER Trademark Justifies a High Statutory Damages Award

In determining an appropriate damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [Luxottica's Ray-Ban WAYFARER] brand and the efforts taken to protect, promote and enhance that brand." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563 at *16. For generations, Luxottica's Ray-Ban brand has been the undisputed world leader in the field of sun and prescription eyewear. [14] at ¶ 4. Luxottica has expended substantial time, money, and other resources in advertising and promoting its trademarks, including the WAYFARER Trademark. [14] at ¶ 11. As thoroughly detailed throughout this Memorandum, eyewear sold under the WAYFARER Trademark has been the subject of extensive unsolicited publicity, noting that the eyewear is "a classic of modern design," a "hipster staple," "eternal," "iconic," and "timeless." Stewart Declaration at ¶¶ 4. As such, the WAYFARER Trademark is a famous and valuable asset of Luxottica.

As part of its worldwide anti-counterfeiting program, Luxottica investigates Internet-based infringement of the WAYFARER Trademark. [14] at ¶ 26. Luxottica also has taken action against the owners/operators of thousands of websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. Thus, Luxottica's request for a high statutory damages award should be given favorable consideration in view of the value of the WAYFARER Trademark and the extensive steps being taken to protect, promote and enhance it. *See Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *11; *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-8 (N.D. Ill. June 18, 2015) (N.D. Ill. June 18, 2015); *Bulgari, S.P.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *7.

### D. The Requested Statutory Damages Award Must Sufficiently Deter Defendant and Similar Online Counterfeit Sellers

Additionally, the remedy imposed under the statute must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood,* 34 F.3d at 1348. For example, in *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to, "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." No. 03-cv-1161, 2005 U.S. Dist. LEXIS 40359, *28 (E.D.N.Y. Aug. 26, 2005). *See also Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *8; *Bulgari, S.P.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *7.

Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), Luxottica respectfully requests the Court's entry of an award in the amount of at least ninety thousand dollars ($90,000) against

18

Defendant. Luxottica's request for damages is reasonable in light of prior awards against Internet-based counterfeiters. *Bulgari, S.p.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *7 (N.D. Ill. Oct. 15, 2015) ($100,000 awarded for three represented sales); *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-10 (N.D. Ill. June 18, 2015) ($150,000 awarded for three infringed marks).

## IV.    LUXOTTICA IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF

In addition to the foregoing relief, Luxottica respectfully requests entry of a permanent injunction enjoining Defendant from advertising, offering for sale, and selling products using the WAYFARER Trademark or otherwise violating its rights in the WAYFARER Trademark. 15 U.S.C. § 1116(a); *See also Luxottica Group S.p.A. v. Li Hui, et al.*, No. 1:15-cv-06977 (N.D. Ill. Sept. 29, 2015) (permanently enjoining and restraining defendants from selling counterfeit products).

## V.    LUXOTTICA IS ENTITLED TO ATTORNEY'S FEES AND COSTS

Pursuant to 15 U.S.C. § 1117(b), in a case involving use of a counterfeit mark, the court shall, unless it finds extenuating circumstances, award a reasonable attorney's fee if the violation consists of intentionally using a mark, knowing such mark is a counterfeit mark, in connection with the sale, offering for sale, or distribution of goods. 15 U.S.C. § 1117(b). *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *14; *Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *13; *Bulgari, S.P.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *9-10. Thus, if a defendant is liable because it was willfully blind, or because it knew the products it was selling were counterfeit, an award of attorney's fees is mandatory under § 1117(b), absent extenuating circumstances. *Tony Jones Apparel, Inc. v. Indigo USA, LLC,* 2005 U.S. Dist. LEXIS 14649, *31-33 (N.D. Ill. July 11, 2005). Luxottica respectfully requests entry of an award of its reasonable attorney's fees and costs pursuant to 15

U.S.C. § 1117(a) and (b) because Defendant knowingly and willfully advertised and offered for sale products using the WAYFARER Trademark.

## VI.    CONCLUSION

Based on the above, Luxottica respectfully requests that this Court enter an order granting summary judgment in favor of Luxottica and against Defendant for willful federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act (Count IV).  Finally, Luxottica requests that this Court award Luxottica statutory damages against Defendant of at least ninety thousand dollars ($90,000), enter a permanent injunction prohibiting Defendant from advertising, offering for sale, and selling products using the WAYFARER Trademark and awarding Luxottica its reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a) and (b).

Dated this 24th day of March 2016.          Respectfully submitted,

/s/ Justin R. Gaudio
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
kguynn@gbclaw.net
aziegler@gbclaw.net
jgaudio@gbclaw.net
jbloodgood@gbclaw.net

*Counsel for Plaintiffs*
*Luxottica Group S.p.A. and Oakley, Inc.*

21

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 24th day of March 2016, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send a "Notice of E-Filing" to the attorneys of record in this case.

/s/ Justin R. Gaudio_____
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
kguynn@gbclaw.net
aziegler@gbclaw.net
jgaudio@gbclaw.net
jbloodgood@gbclaw.net

*Counsel for Plaintiffs*
*Luxottica Group S.p.A. and Oakley, Inc.*
