**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LUXOTTICA GROUP S.p.A. and OAKLEY, INC., | ) ) ) | Case No. 16-cv-00487 |
| Plaintiffs, | ) ) | **Judge Manish S. Shah** |
| v. | ) ) ) | **Magistrate Judge Sheila Finnegan** |
| HAO LI, et al. | ) ) | |
| Defendants. | ) | |

**DEFENDANT INTERNET STORES DEALSGOING, SFCDIRECT AND UPTOGETHERTEK'S MEMORANDUM OF LAW IN SUPPORT OF THEIR RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 5

II. DEFENSE TO INFRINGEMENT ................................................................................... 6

    A. Elements of a Fair Use Defense..................................................................................

    B. Defendants' Selection of "Wayfarer" as a Style Category in its eBay Listings is a Fair Use
       .......................................................................................................................

III. DEFENDANT'S LACK OF INTENT TO COUNTERFEIT ............................................. 9

IV. LUXOTTICA IS ENTITLED TO MINIMAL DAMAGES .............................................. 11

    A. Overview of Other Factors ............................................................................................

    B. Defendants eBay Sales .................................................................................................

    C. The Cases Luxottica Cites Contain Examples of the Kind of Parties Counterfeiting Legislation was Designed to Penalize ............................................................................

V. LUXOTTICA IS NOT ENTITLED TO ATTORNEY'S FEES AND COSTS .................. 15

VI. CONCLUSION ............................................................................................................... 16

# **TABLE OF AUTHORITIES**

**Cases**

*Bulgari, S.p.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606 (N.D. Ill. Oct. 15, 2015)

*Chi-Boy Music v. Charlie Club*, 930 F.2d 1224 (7th Cir. 1991)

*Coach v. Treasurebox,* No. 03-cv-0468, (N.D. Ind. 2013)

*Coach, Inc. and Coach Services, Inc. v. Gail D. Becka d/b/a Hair Cottage*, 2012 U.S. Dist. LEXIS 157311 (M.D. Ga. Nov. 2, 2012)

*Hard Rock Café Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1149 (7th Cir 1992)

*Joe Hand Promotions, Inc. v. Hernandez* 2004 U.S. Dist. LEXIS 12159 (S.D.N.Y. June 30, 2004)

*Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*, No. 03-cv-5506, 2005 U.S. Dist. LEXIS 26626 (N.D. Ill. Oct. 27, 2005)

*Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*, No. 03-cv-4986, 2004 U.S. Dist. LEXIS 22563 (N.D. Ill. Nov. 5, 2004)

*Louis Vuitton S.A. v. Pun Yang Lee*, 875 F.2d 584 (7th Cir. 1989)

*Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961 (N.D. Ill. June 18, 2015)

*Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 2010 WL 4721581 (7th Cir. Nov. 23, 2010)

*Phillip Morris USA Inc. v. Marlboro Express,* 2005 U.S. Dist. LEXIS 40359 (E.D.N.Y. Aug. 26, 2005)
*Rolex Watch U.S.A., Inc. v. Jones*, 2002 U.S. Dist. LEXIS 6657 (S.D.N.Y. Apr. 17, 2002)

*Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161 (S.D.N.Y. 1999)

Sorensen v. WD-40 Co., No. 14-3067, 2015 BL 184918 (7th Cir. June 11, 2015)

*Sunmark, Inc. v. Ocean Spray Cranberries, Inc*., 64 F.3d 1055 (7th Cir. 1995)

*Tiffany (NJ) LLC v. Dong*, No. 11-cv-2183, 2013 U.S. Dist. LEXIS 114986 (S.D.N.Y. 2013)

*Tiffany Inc. v. eBay Inc.* 600 f.3d 93 (2d. Cir. 2010)

**Statutes**

15 U.S.C. § 1057(b) ........................................................................................................................ 6

15 U.S.C. § 1065 ....................................................................................................................... 3, 6

15 U.S.C. § 1114(1) ........................................................................................................................ 5

15 U.S.C. § 1115(a) ........................................................................................................................ 6

15 U.S.C. § 1115(b) .................................................................................................................... 3, 6

15 U.S.C. § 1116(a) ................................................................................................................ 17, 18

15 U.S.C. § 1117(b) ................................................................................................................ 17, 18

15 U.S.C. § 1117(c) .................................................................................................... 9, 10, 12, 16

15 U.S.C. § 1117(c)(1) ................................................................................................................. 10

15 U.S.C. § 1117(c)(2) ........................................................................................................... 10, 16

15 U.S.C. § 1125(a)(1) ................................................................................................................... 5

15 U.S.C. § 1127 ............................................................................................................................ 7

17 U.S.C. § 504(c) ....................................................................................................................... 12

Fed. R. Civ. P. 56(a) ...................................................................................................................... 4

MEMORANDUM

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Defendant internet stores DEALSGOING, SFCDIRECT and UPTOGETHERTEK submit this Response and Counter Motion for Summary Judgment against Plaintiffs Luxottica Group S.p.A. and Oakley, Inc. (collectively, "Luxottica" or "Plaintiff"). Unlike the defendants in the cases cited by Plaintiff in its request for high statutory damages, the Defendant has neither the intent, willful blindness, or other criminal details that may have led a court in its discretion to award higher statutory damages.

This Defendant is an innocent infringer with sound business practices and procedures in place to investigate possible infringement issues; it is not the intentional counterfeiter that the Trademark Counterfeiting Act, Anticounterfeiting Consumer Protection Act and more recent legislation were crafted to protect the public from. It has an affirmative defense of fair use to its listing of the sunglasses at issue in this case. The Defendant submits this response to request judgment in its favor and, at a minimum, appeal to this Court's discretion in awarding minimal damages to the Plaintiff.

## I. INTRODUCTION

STRADE FAREAST LIMITED (the "Company") owns and operates the eBay store fronts, including the Defendant store front. Affidavit of John Sun (the "Sun Affidavit") ¶ 1. These store fronts are based in the People's Republic of China and are re-sellers of a variety of unbranded goods. *Id.* The stores, including the Defendant store

front, sell unbranded goods in a variety of categories, including electronics, clothing, jewelry, home & garden, pet supplies, musical instruments, sporting goods, toys & hobbies, health & beauty, and motor parts. *Id.* at ¶ 2.

The Company does follow a set of procedures to attempt to only list unbranded products online, and avoid infringing others' intellectual property. *Id.* at 3. For example, its new hires and employees receive regular intellectual property training, they receive regular updates on developments in this area, and have access to a company database that compiles any previous findings. *Id.* at ¶¶ 5-7.

The Company store fronts list over twenty thousand (20,000) different items across all categories in its storefronts. *Id.* at ¶3. Of these approximately, twenty thousand items, one kind of sunglasses is at issue: a pair of sunglasses framed with the "wayfarer" style, and listed in the way "wayfarer" is categorized on eBay. *Id.*

This particular listed item caught the attention of one interested buyer: an investigator working for Plaintiff. *Id.* at ¶2. Neither the investigator nor Plaintiff contacted the Defendant to inquire about this listing or demand that it be taken down. Sun Aff. at ¶10. Neither did they appear to dispute the listing with eBay, as the Defendant was not contacted by eBay regarding this listing. *Id.* Instead, the Defendant was unaware of these issues prior to receiving notice of this lawsuit. *Id.*

## II. DEFENSE TO INFRINGEMENT

Even where there is evidence of trademark infringement, the Lanham Act contemplates situations where it is acceptable for a defendant to use a plaintiff's mark in commerce. *See* 15 U.S.C. §1115(b). There are several public policy reasons behind this.

One such reason is that "[e]verybody has got a right to the use of the English language and has got a right to assume that nobody is going to take that English language away from him." Hearings on H.R. 102 et al. before the Subcommittee on Trade–Marks of the House Committee on Patents, 77th Cong., 1st Sess., 167–168 (1941) (testimony of Wallace Martin, Chairman, American Bar Association Committee on Trade–Mark Legislation).

In situations where a defendant is using a mark in a way to describe its product, the Lanham Act has an affirmative defense for infringement. 15 U.S.C. § 1115(b)(4). The Defendant's selection of "Wayfarer" as its eBay category listing, and subsequent mention of "wayfarer" in its listing, satisfies the elements of this defense.

Elements of Descriptive Fair Use

The Lanham Act sets forth the elements of descriptive fair use in 15 U.S.C. § 1115(b)(4): "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark . . . a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin." *Id.*

These elements were explored in the Seventh Circuit in *Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055 (7th Cir. 1995). In *Sunmark*, the defendant was using the term "sweet-tart" to describe its cranberry juice to the public. The plaintiff, owner of the incontestable mark SWEE-TARTS, as well as other related marks, sued the defendant under the Lanham Act and related state statutes. *Id.* The court first questioned whether "[the defendant] employed the words "sweet" and "tart" simply as descriptions,

and 'otherwise than as a mark'." *Id.* at 8. The court noted that the defendant, because it described a drink that contained both elements of sweetness and tartness, did not use the plaintiff's mark.

The other element is whether a defendant used the description in bad faith. This has been clarified to mean more than mere knowledge of a mark. *Sorensen v. WD-40 Co.* No. 14-3067, 2015 BL 184918 (7th Cir. 2015). Instead, a defendant would need to be found to have a "subjective" bad faith to pass of its products as the mark holders. *Id.*

Defendants Use is a Fair Use

When listing the sunglasses at issue in this case on eBay, the Defendant was given fourteen style categories of sunglasses to choose from, including "aviator," "butterfly," "cat eye," "designer," "oval," "rectangular," "rimless," "round," "shield," "sport," "square," "wayfarer," "wrap," and "not specified." Sun Aff. at ¶9. If this wayfarer category is selected and filtered, there are over one hundred (100) remaining brand filters to choose from, including Plaintiff's RAY-BAN and many other options, including "unbranded" and "not specified." *Id.*

Wayfarer has become so commonplace on eBay and other internet retailers that it is common parlance to describe the shape of sunglasses. The Defendant was merely using the terms available to it to describe its glasses when it made its product listings. Furthermore, the Defendant had no bad faith as it did not list any of the sunglasses as RAY-BAN, nor did those marks appear anywhere on the product itself. *Id.* Plaintiff's own Verified Rights Owner page on eBay does nothing to inform eBay stores similar to Defendant, as it lists many of its brands. It does not mention "wayfarer" on its page. This

omission of wayfarer on Plaintiff's page is impliedly a form of actual notice that wayfarer is not protected. It is unfair to penalize Defendants under these circumstances. Defendant would have no reason to check.

### III. DEFENDANT'S LACK OF INTENT TO COUNTERFEIT

<u>Overview of Counterfeiting Legislation</u>

The statutory civil damages that Plaintiff is requesting were added to the Lanham Act with the passage of the Trademark Counterfeiting Act and the Anticounterfeiting Consumer Protection Act, whose primary purpose was to give prosecutors more weapons in fighting criminal organizations that engaged in the manufacture and trafficking of counterfeit goods. Pub. L. No. 98-473, §1502(a), 98 Stat. 2178 (1984); Pub.L. No. 104-153, 110 Stat. 1386 (1996). Lawmakers had felt that the Lanham Act was ineffective in dealing with this "uniquely pernicious" and "evil" activity that often left little records because the counterfeiters transacted in cash, did not maintain a place of business and would destroy any counterfeit goods in their possession when they received notice of a proceeding against them. *Id. See also* Lucas G. Paglia & Mark A. Rush, *End Game: The Ex Parte Seizure Process and the Battle Against Bootleggers,* 4 VAND. J. ENT. L. & PRAC. 4, 5 (2002).

These lawmakers noted that because it is "unlikely federal prosecutors will be able to prosecute more than a fraction of those who traffic in known fakes," the additional civil penalties as well as procedures for a trademark owner to receive an *ex parte* order for seizing property without notice were warranted. S. Rep. No. 98-526, at 6. Many things have changed since the initial passage of these pieces of legislation, including the

digital technology able to both detect as well as permanently retain the records of counterfeiting operations, but the laws which are being used to justify large damages stem from Congress's attempts to protect the public from criminals.

The Defendants Intent

     Plaintiff's Motion mentions in passing, but does not go into detail on, the most important variable that impacts both the prosecution of a criminal and the award of damages in trademark infringement claims: the intent, or willfulness, of the Defendant. This Circuit began recognizing in *Louis Vuitton S.A. v. Lee* that intent could be determined through actual knowledge of the infringement or being "willfully blind" to the infringing activity. 875 F.2d 584, 590 (7th Cir. 1989).

     This position was further clarified in *Hard Rock Café Licensing Corp. v. Concession Services, Inc.*, where the Seventh Circuit emphasized that the standard for willful blindness to an infringement is higher than having a "reason to know" that products could be infringing, and failing to investigate; which is akin to negligence. *Id.* Instead, they held that "[t]o be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate." 955 F.2d 1143, 1149 (7th Cir 1992).

     In this case the Defendant is a re-seller of unbranded goods in several product categories that undertakes many efforts to investigate the kinds of intellectual property issues in this case. These pro-active efforts to identify possible issues out of thousands of items, rather than pro-actively avoiding the investigation of a possible infringement, are nearly the opposite of fact patterns where courts in this circuit found willful blindness. Instead of having a reckless disregard for or blindness toward a rights holder, the

Defendant's Company has instituted policies to defer to them as much as reasonably possible. Therefore, any damages awarded to Plaintiff should, at a minimum, not include the additional damages for willful infringement found in 15 U.S.C. §1117(c)(2).

## IV. PLAINTIFF IS OTHERWISE ENTITLED TO MINIMAL DAMAGES

A. Overview of Other Factors

Even where willfulness is not found under 15 U.S.C. §1117(c)(2), the statutory damages provision of the Lanham Act call for "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c). Several courts interpreting 15 U.S.C. §1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. §504(c). *See Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, *10; *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C §504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion." *Id*. In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to copyright infringement." *Id*. The court in *Chi-Boy* added that "*[w]hen the infringement is willful*, the statutory damages may be designed to penalize the infringer and deter future violations." *Id.*

B. Defendants Ebay Sales

Several of these factors weigh in the Defendants favor for low damages. First, the amount of actual damages is very easy to determine. One hundred percent of the sales at issue took place on eBay. Sun Aff. at ¶10. Services such as eBay, which maintain records of sales transactions, facilitate the record keeping needed to determine the amount of damages in infringement actions against its store fronts. Furthermore, the Defendant disclosed this sale to Plaintiff's counsel shortly after being notified of this lawsuit.

While the Defendant is an online seller, it only sells on eBay. Sun Aff. at ¶2. eBay maintains a Verified Rights Owner program, which has been deemed strong enough to avoid trademark infringement claims in the United States. *See Tiffany Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010) (131 S. Ct. 647 *cert. denied*). Plaintiff contends that it has a vast worldwide, pro-active anti-counterfeiting operation. Graham Declaration at ¶ 55. One seemingly inexpensive addition to this anti-counterfeiting operation is a page listing for "Luxottica Retail" on eBay, where brand owners can educate both consumers and sellers about their intellectual property rights. Sun Aff. at ¶11.

Interestingly, viewers of the Luxottica Retail Verified Rights Owner page on eBay see references to RAY-BAN, LUXOTTICA, KILLER LOOP and other brands of Plaintiff, but do not contain a reference to the "Wayfarer" listing that is at issue in this case. *Id.* This furthers the Defendant's argument that it was only listing sunglasses in the manner set forth by eBay, and that there was no reason to suspect otherwise.

C.  Damages for Deterrence Do Not Fit the Facts of this Case

The Plaintiff cites examples of several cases where higher statutory damages were awarded to serve as a deterrent.  These cases cite the need to deter "willful internet-based counterfeit[ers]," or deter the "future infringement of *the defendant or those situated like him*." (emphasis added) See *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-10 (N.D. Ill. June 18, 2015); *Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*, No. 03-cv-5506, 2005 U.S. Dist. LEXIS 26626, *16 (N.D. Ill. Oct. 27, 2005).  The inclusion of "willful" or "those situated like" the defendant at issue is a reminder that the harsh effects of statutory damages have been reserved for those harboring either a criminal intent or desire to look away.  See *Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*, 2004 U.S. Dist. LEXIS 22563 (N.D. Ill. Nov. 5, 2004) (noting that a defendant principal testified that he noticed that the cigarette was bought less expensively and in different packaging than their prior purchases, but he decided not to investigate further).

In *Luxottica USA LLC v. The Partnerships*, there is a critical distinction between the facts of that case and the facts of this one: the defendant stipulated that it willfully sold over one hundred sunglasses that clearly displayed the RAY-BAN mark on them. 2015 U.S. Dist. LEXIS 78961 at *8.  Furthermore, the mark at issue in that case clearly indicates the source of the mark: Ray-Ban, and by extension Plaintiff. *Id.*  "Wayfarer," on the other hand, is a descriptive term that can be used to identify the style of the glasses. Even in the exhibits that the Plaintiff has attached in support of the notoriety of its mark, "wayfarer" is rarely if ever used in the absence of the indicator of source: RAY-BAN.

In *Bulgari, S.P.A. v. Xiaohong et al.,* this Court was able to look at the facts and

find intent. *See* 2015 U.S. Dist. LEXIS 140606. Specifically, it noted that the defendant's listing photos clearly showed the BVGARI mark even where his product listings did not. *Id.* at *6.

The other cases Plaintiff cites as examples of high statutory damages awards have even more divergent fact patterns. The high statutory damages in *Tiffany v. Dong* were assessed against a payment processor who was aware of the over ten thousand infringing products appearing on its websites. *See* 2013 U.S. Dist. LEXIS 114986 (S.D.N.Y. Aug. 9, 2013). In *Phillip Morris USA Inc. v. Marlboro Express*, which Plaintiff cites as an example of the court deterring future infringers, the defendants operated a website containing one of the plaintiff's marks (www.marlboroexpress.com), and imported approximately two hundred thousand (200,000) cartons of counterfeit cigarettes. 2005 U.S. Dist. LEXIS 40359 (E.D.N.Y. Aug. 26, 2005) at *6. Several of the defendants separately pled guilty to criminal charges for smuggling or trafficking in counterfeit goods. *Id.* at 8.

In *Rolex Watch U.S.A. v. Jones*, which is cited by Plaintiff as an example where the court was concerned about the wide-ranging effects of the internet, the defendant was operating several websites, including "www.knockoffalley.com" and "www.replica4u.com." 2002 U.S. Dist. LEXIS 6657 (S.D.N.Y. Apr. 17, 2002). Additionally, the was unresponsive to plaintiff cease and desist letters and court discovery requests, some which was due to the defendant leaving the city and serving jail time in another state. *Id.*

Courts in this district and elsewhere have opined on being strict in the application of statutory damages in the absence of bad faith. *See Joe Hand Promotions, Inc. v.*

*Hernandez*, 2004 U.S. Dist. LEXIS 12159 (S.D.N.Y. June 30, 2004) (citing *Doehrer v. Caldwell*, 1980 U.S. Dist. LEXIS 10713 (N.D. Ill. 1980) (awarding $1,500 in enhanced damages where "[a] mechanical application of the statutory damage provision of the Copyright Act leads to absurd results. While [the Act's] compensatory purpose should not be minimized, its deterrent provisions should not be converted into a windfall where, as a practical matter, the plaintiff has suffered only nominal damages.")

In light of the Defendants lack of intent, proactive procedures, other facts that warrant damages for deterrence, the Defendant respectfully requests that this Court award minimal statutory damages. *See Coach v. Treasurebox,* No. 03-cv-0468, (N.D. Ind. 2013) (awarding $3,000 per trademark infringed despite willful blindness to infringement, because this number was sufficient to deter similar defendants in the future); *Coach, Inc. and Coach Services, Inc. v. Gail D. Becka d/b/a Hair Cottage*, No. 5:11-CV-371 (MTT), 2012 U.S. Dist. LEXIS 157311 (M.D. Ga. Nov. 2, 2012) (awarding $2,000 per counterfeit mark infringed due to lack of intent to counterfeit).

## V. PLAINTIFF IS NOT ENTITLED TO ATTORNEY'S FEES AND COSTS

Absent extenuating circumstances, courts in the Seventh Circuit do not award attorneys fees in Lanham Act litigation. The Seventh Circuit clarified the standard in *Nightengale v. Anodyne Therapy, LLC,* where it stated that attorneys fees are only warranted where the losing party conducted the Lanham Act litigation for an improper purpose other than obtaining a favorable judgment (such as to obtain a competitive advantage or for financial gain). *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 2010 WL 4721581 (7th Cir. Nov. 23, 2010).

In this case we have an innocent infringer Defendant who has no choice but to mount a defense in light of the potentially severe statutory penalties were it to default.

**VI. CONCLUSION**

Based on the above, the Defendant respectfully requests the Court to enter judgment in its favor and, at a minimum, appeal to this Court's discretion in awarding minimal damages to the Plaintiff. The anti-counterfeiting legislation that underpins the potentially large statutory damages available were designed to deter criminal counterfeiting organizations, not legitimate businesses such as Defendants who do not have an intent to infringe.

Dated this 19th day of April 2016.    Respectfully submitted,

        ___/s/_ Jeffrey S. Firestone_____
        Jeffrey S. Firestone
        Attorney for Defendants
        P.O. Box 111
        New Paltz, NY 12561
        China Phone: 011 86 137 142 66 915
        USA Tel: 1 310 628 0808
        Lawyer8@hotmail.com
        Illinois Attorney number 3121709

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that April 19th, 2016, I caused the foregoing to be filed via the CM/ECF system and served on opposing counsel via electronic notification.

I declare under penalty of perjury under the laws of the United States and the State of Illinois that the foregoing is true and correct.

___/s/_ Jeffrey S. Firestone_____